# United States District Court
## Middle District Of Florida
### Orlando Division

MELISSA MARIE OLIVEIRA,

        Plaintiff,

v.                                    Case No:   6:21-cv-131-LHP

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant

_____

## MEMORANDUM OF DECISION[1]

Melissa Marie Oliveira ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits.   Doc. No. 1.   Claimant raises three arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed for an award of benefits, or alternatively, remanded to the Commissioner for further consideration.   Doc. No. 34, at 11, 26, 30, 39.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the

_____

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.   *See* Doc. Nos. 24–26.

Commissioner should be affirmed.   *Id.* at 39.   For the reasons discussed herein, the Commissioner's final decision is **AFFIRMED.**

## I.      PROCEDURAL HISTORY.

On April 23, 2019,[2] Claimant filed an application for disability insurance benefits; she alleges a disability onset date of July 25, 2018.   R. 228–36.   Claimant's application was denied initially and on reconsideration, and Claimant requested a hearing before an ALJ.   R. 158–61, 165–77, 181.   The ALJ held an administrative hearing on August 10, 2020.   R. 32–69.

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   R. 15–25.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 225–27.   On November 24, 2020, the Appeals Council denied the request for review.   R. 1–6.   Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

---

[2] The "Application Summary for Disability Benefits" and the Joint Memorandum state that Claimant filed the application on April 23, 2019, but according to the ALJ's decision, Claimant filed the application on December 18, 2018.   *Compare* R. 15, *with* R. 230 and Doc. No. 34, at 1.   For consistency, and because the application date is not dispositive of this appeal, the Court utilizes the application date stated by the parties.

## II.     THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 15–25.[4]   The ALJ first found that Claimant meets the insured status requirements of the Social Security Act (SSA) through December 31, 2023.   R. 17.   The ALJ also found that Claimant had engaged in substantial gainful activity after the July 25, 2018 alleged disability onset date.   *Id.*[5]   The ALJ further concluded that Claimant suffered from the following severe impairments: morbid obesity, lumbar degenerative disc

---

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   Doc. No. 34.   Accordingly, the Court adopts those facts include in the body of the Joint Memorandum by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[5] The ALJ noted that Claimant worked after the alleged disability onset date at the level of substantial gainful activity, but the ALJ still proceeded with the full sequential evaluation process.   *See* R. 17.   Claimant raises no issues in this appeal regarding the ALJ's substantial gainful activity findings.

disease/spondylosis status post laminectomy and fusion; cervical/thoracic spondylosis; depression; and anxiety disorder, but that Claimant did not have an impairment of combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part, Subpart P, Appendix 1.   R. 17–19.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[6] except:

> she can frequently handle, finger, push, pull and/or reach overhead with both upper extremities, can occasionally push, pull and/or operate foot controls with both lower extremities, can occasionally balance on uneven surfaces, can occasionally stoop, kneel, crouch, and crawl, can occasionally climb stairs and ramps, can never climb ladders, ropes and scaffolds and can occasionally be exposed to vibrations, unprotected heights and moving machinery parts.   The claimant requires a moderate noise work environment as defined in the DOT and SCO and is able to understand and remember simple instructions, make simple work related decisions, carry-out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with coworkers and the public.

---

[6] The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

R. 19–20.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work, including work as an office manager, commercial sales representative, or office helper.   R. 23.   However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include marker, non-postal mail clerk, and router.   R. 24.   Accordingly, the ALJ concluded that Claimant was not disabled from the July 25, 2018 alleged disability onset date through the date of the decision. R. 25.

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence which is defined as "more than a scintilla and is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises three assignments of error:   (1) the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to adequately weigh the medical opinions of Dr. Paul Keller and his physician's assistant Michael Teepe, PA-C; (2) the ALJ erred in relying on testimony of the VE after posing and relying on a hypothetical question that did not adequately reflect Claimant's limitations; and (3) the ALJ failed to properly consider Claimant's subjective complaints.   Doc. No. 34, at 11, 26, 30.   Each assignment of error will be discussed in turn.

A.     Medical Opinions of Dr. Keller and PA-C Teepe.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded by regulation on other grounds as stated in Jones v. Soc. Sec. Admin.*, No. 22-10507, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022) (citing *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022)).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis*, 125 F.3d at 1440.   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.   20 C.F.R. § 404.1545(a)(3).

Claimant filed her application for disability insurance benefits on April 23, 2019.   R. 230.   Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.   We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[7]   The most important factors we consider

---

[7] Subparagraph (c) provides that the factors to be considered include: (1)

> when we evaluate the persuasiveness of medical opinions and
> prior administrative medical findings are supportability
> (paragraph (c)(1) of this section) and consistency (paragraph (c)(2)
> of this section).   We will articulate how we considered the medical
> opinions and prior administrative medical findings in your claim
> according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).   The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."   *Id.* § 404.1520c(b)(2).[8]

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative medical finding from one medical source individually."   *Id.* § 404.1520c(b)(1). "Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss

---

supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.   20 C.F.R. § 404.1520c(c).

[8] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

or explain how [she] considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)).   *See also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

Here, Claimant argues that the ALJ erred in the RFC determination by failing to state the weight assigned to the medical opinions of Dr. Keller and his physician's assistant, Michael Teepe, PA-C.   Doc. No. 34, at 11–16.

On July 25, 2018, Claimant underwent corrective spinal surgery, which was performed by Dr. Keller.   R. 471.   On August 9, 2018, Claimant had a post-operative evaluation with Dr. Keller.   R. 472.   On August 29, 2018, Claimant returned to Dr. Keller for screening for possible deep vein thrombosis.   R. 471.   On September 14, 2018, Claimant again visited Dr. Keller, at which point Dr. Keller stated that Claimant was "doing very well," with "no lower extremity pain," and although her back pain was not completely gone, it was "different."   R. 470. According to the September 14, 2018 treatment note, Dr. Keller:

> returned [Claimant] to work 4 hours per day with the restrictions of no
> heavy lifting, no lifting over 10 pounds, no prolonged sitting, standing
> or walking without breaks, and no pushing or pulling.   These are

temporary and she will call us in the interim if she would like to go back to full duty prior to my seeing her at the next visit.

*Id.*

Claimant returned to Dr. Keller's office with some concerns on October 3, 2018, and was seen by PA-C Teepe.   R. 469.   Claimant's pain level was 4/10, which worsened with activity.   *Id.*   PA-C Teepe recommended continued physical therapy and noted that "a work note was provided."   *Id.*   The record indicates that Claimant could return to work at that time with partial limitations, which were the "functional imitations or restrictions as listed previously."   *See* R. 848.

On November 14, 2018, Claimant had a three-month follow up visit with PA-C Teepe.   R. 468.   At the appointment, Claimant appeared distressed, and complained of back pain.   *Id.*   PA-C Teepe noted that Claimant had quit her job due to her pain.   *Id.*   PA-C Teepe scheduled an MRI.   *Id.*[9]

Approximately six months post-surgery, Claimant saw Dr. Keller on January 8, 2019.   R. 467.   Claimant continued to complain of pain, and although she was initially better after surgery appeared to have a recurrence of pain.   *Id.*   Dr. Keller stated that there was no need for surgical intervention and that Claimant would

---

[9] Although the Joint Memorandum states that PA-C Teepe indicated on November 14, 2018 that Claimant "may return to work so long as she follows the functional limitations or restrictions as listed previously," *see* Doc. No. 34, at 4, that note appears to be a recitation of the restrictions determined at the prior visit.   *See* R. 468.   *See also* R. 845–46.

benefit from physical therapy and pain management.   *Id.*   No work restrictions were noted.   *See id.*

On February 27, 2019, Claimant returned to Dr. Keller's office following a motor vehicle accident.   R. 841.   PA-C Teepe's examination findings were overall unremarkable, and he recommended physical therapy.   R. 840–42.   No work restrictions were noted.   *See id.*

In the decision, the ALJ discusses the records pertinent to Claimant's corrective spinal surgery, the treatment notes from her post-operative visits, and the results of her post-surgery MRI:

> An MRI of the claimant's lumbar spine in July 2018 showed moderate central disc herniations at L4-5 and L5-S1, and multilevel degenerative disc disease, central stenosis, facet arthropathy and neural foraminal encroachment.   (Exhibits B2F/7; B10F/11).   The claimant underwent corrective surgery on her back, including revision bilateral L5-S1 decompression with bilateral S1 nerve root foraminotomies, primary decompression L4-L5 with bilateral L5 nerve root foraminotomies, posterior spinal fusion L4 through the sacrum, posterior lumbar interbody fusion L5-S1, implantation of PEEK cage at L5-S1, segmental instrumentation L4 through the sacrum using instrumentation system, local bone autograft from laminar bone, and discectomy L4-L5.   (Exhibits B5F/3; B17F/2).

> In August 2018, the claimant was six weeks post lumbar decompression and fusion L4 to the sacrum.   She was "doing very well" with no lower extremity pain, and improved preoperative back pain.   (Exhibit B2F/34).   Motor strength testing was 5/5 normal in the bilateral lower extremities and gait was within normal limits. (Exhibit B2F/37).   Range of motion (ROM) of the back was normal. (Exhibit B12F/2).

MRI of the claimant's lumbar spine in January 2019 showed interval discectomies L4 through S1, and bilateral pedicle screw fusion and laminectomies L4 through S1.   (Exhibits B10F/10; B19F/2).   The claimant was noted to have back pain, but left leg pain had improved since surgery.   On physical exam, the claimant had a positive left Patrick maneuver and pain to palpation of the left sacroiliac joint.   There were no findings to suggest further back surgery would be beneficial.   She was "improving and healing from her back surgery."   Motor exam was 5/5 throughout all areas tested.   Memory was normal.   Gait was normal and she was able to stand without difficulty.   (Exhibit B14F/1, 4).   The claimant denied memory difficulties, balance problems, or chronic headaches.   She reported anxiety.   (Exhibit B18F/8). . . .

R. 21.   But in the decision, the ALJ does not specifically address the post-operative temporary work restrictions given by Dr. Keller.   *See id.*

In the Joint Memorandum, Claimant argues that the ALJ erred in failing to "weigh" the opinions from Dr. Keller and PA-C Teepe regarding the temporary work restrictions imposed.   Doc. No. 34, at 14–15.   According to Claimant, these temporary restrictions are "clearly at odds with the [RFC] determination" regarding her ability to perform light work.   *Id.* at 15.   Claimant contends that the ALJ's alleged error in failing to weigh the opinions is not harmless because the ALJ's hypothetical questions to the VE did not include the limitations noted by Dr. Keller and PA-C Teepe.   *Id.*   So, Claimant requests reversal.   *Id.* at 15–16.

In response, the Commissioner provides a lengthy recitation of the new Social Security regulations, and notes that the ALJ was under no obligation to "weigh" the

medical opinions at issue.   *Id.* at 16–23.[10]   However, the Commissioner concedes that the ALJ erred by not evaluating these medical opinions in the decision.   *Id.* at 23.   Nonetheless, the Commissioner argues that any error was harmless on the facts of this case because the post-surgical work restrictions Dr. Keller and PA-C Keepe recommended were merely temporary.   *Id.* at 24.

On review, the Court agrees with the Commissioner, and the persuasive authority she cites in support.   For example, in *Cymek v. Comm'r of Soc. Sec.*, No. 5:20-cv-00122-PRL, Doc. No. 22 (M.D. Fla. Aug. 27, 2021), the claimant sought reversal where the ALJ did not address post-surgical lifting restrictions by the surgeon and the surgeon's physician's assistant.   Those restrictions were reflected in post-surgery follow-up notes by physician's assistants, but were not included in later treatment notes.   *Id.* at 9–10.   The court addressed the argument under the new Social Security regulations, and determined that because the record contained numerous indications that the lifting restrictions were temporary, and because the record implicitly indicated that the restrictions were lifted, any error by the ALJ in

---

[10]  Given the Eleventh Circuit's recent opinion in *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022), which the Commissioner has filed as supplemental authority, *see* Doc. No. 35, the Commissioner is correct that case law applicable to medical opinions under the older version of the Social Security regulations has no application here.   *See Harner*, 38 F.4th at 896 ("[S]ection 404.1520c . . . abrogates our earlier precedents applying the treating-physician rule.").

failing to properly evaluate the temporary work restrictions was harmless.   *Id.* at 10–11.

Similarly, in *Kirkpatrick v. Berryhill*, No. 2:17-CV-502-GMB, 2018 WL 6070343 (M.D. Ala. Nov. 20, 2018), the court addressed the claimant's contention that the ALJ erred (under the older Social Security regulations) in failing to weigh the opinion of a treating surgeon.   The court found any error harmless, however, because although in a post-operative plan the surgeon recommended that the claimant avoid lifting more than 1 pound, the ALJ fully discussed the surgeon's progress notes, there was no evidence that the claimant was not expected to resume function following the surgery, and the context indicated that the lifting restriction was a temporary post-operative recommendation rather than a permanent limitation.   *Id.* at *8–9.   *See also Saffioti v. Comm'r of Soc. Sec.*, No. 2:17-cv-143-FtM-99CM, 2019 WL 298473, at *4 (M.D. Fla. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 293324 (M.D. Fla. Jan. 23, 2019), *adhered to*, 2019 WL 1513354 (M.D. Fla. Apr. 8, 2019) (reversing on other grounds but determining that the failure to state weight given to medical opinion was harmless error because Plaintiff's disability was temporary); *Whitted v. Berryhill*, No. 7:17-CV-124-FL, 2018 WL 5291861, at *7 (E.D.N.C. May 17, 2018), *report and recommendation adopted*, 2018 WL 4664124 (E.D.N.C. Sept. 28, 2018) ("While there is no explicit record that states the neurosurgeon cleared Claimant of the limitations contained in the discharge

instructions, such instructions are not reiterated in the record and it is clear to the court those instructions were discharge instructions aimed at helping Claimant recover properly from her surgery.   Accordingly, to the extent the ALJ erred in failing to weigh the discharge instructions, the court finds any such error is harmless given Dr. Davis did not treat Claimant and the additional limitations contained in the discharge instructions were typical of any post-surgical discharge.").

Here, the work restrictions imposed by Dr. Keller and PA-C Teepe followed Claimant's corrective spinal surgery and specifically state that such restrictions are temporary.   *See* R. 470.   And notably, subsequent treatment notes do not reiterate the temporary work restrictions.   *See* R. 467, 840–42.   Given that the overall context indicates that the post-surgery restrictions were temporary, the Court agrees with the Commissioner that any failure by the ALJ to evaluate the temporary work restriction opinions of Dr. Keller and PA-C Teepe in this case was harmless.   *See Cymek*, No. 5:20-cv-00122-PRL, Doc. No. 22, at 10–11; *Kirkpatrick*, 2018 WL 6070343, at *8.

Accordingly, the Court rejects Claimant's first assignment of error.

B.   <u>Vocational Expert's Testimony</u>.

An ALJ may consider the testimony of a VE at step five of the sequential evaluation process when determining whether the claimant can perform other jobs

in the national economy.   *Phillips*, 357 F.3d at 1240, *superseded by regulation on other grounds as stated in Jones*, 2022 WL 3448090, at *1.   The ALJ must pose hypothetical questions that are accurate and that include all of the claimant's functional limitations.   *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).   However, the ALJ is not required to include in the hypothetical question "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Claimant argues that the hypothetical posed by the ALJ to the VE in this case "does not accurately account for all the limitations of the claimant as outlined in the evidence" based on the ALJ's failure to evaluate the opinions of Dr. Keller and PA-C Teepe.   Doc. No. 34, at 28.[11]

As discussed above, the Court finds that any error in the ALJ's failure to evaluate the temporary work restrictions by Dr. Keller and PA-C Teepe was harmless on the facts of this case.   Consequently, because "the ALJ's hypothetical question to the VE, which is consistent with the ALJ's RFC determination, properly accounted for Claimant's functional limitations," Claimant's second assignment of

---

[11]  Claimant also includes one sentence regarding Claimant's use of a cane, *see* Doc. No. 34, at 26, which appears to be a scrivener's error, given that, as the Commissioner points out, neither Dr. Keller nor PA-C Teepe opined regarding Claimant's use of a cane, nor does the record contain other evidence suggesting that Claimant requires a cane to ambulate.

error is unpersuasive.   *See Straka-Acton v. Comm'r of Soc. Sec.*, No. 6:14-cv-630-Orl-GJK, 2015 WL 5734936, at *4 (M.D. Fla. Sept. 29, 2015).   *See also Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (rejecting argument that the ALJ's hypothetical to the VE was defective "because the criticisms that [the claimant] aims at the hypothetical question are identical to those leveled at the ALJ's RFC, and, as discussed above, the RFC is supported by substantial evidence").

A.   Claimant's Subjective Complaints of Pain.

A claimant may establish disability through his or her own testimony of pain or other subjective symptoms.   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."   *Foote*, 67 F.3d at 1561–62.   The Court will not disturb a clearly articulated finding that is supported by substantial evidence.   *Id*. at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and

persistence of those symptoms limit the claimant's ability to work.   20 C.F.R. §
404.1529(c)(1).   In doing so, the ALJ considers a variety of evidence, including, but
not limited to, the claimant's history, the medical signs and laboratory findings, the
claimant's statements, medical source opinions, and other evidence of how the pain
affects the claimant's daily activities and ability to work.   *Id*. § 404.1529(c)(1)–(3).
Factors relevant to the ALJ's consideration regarding a claimant's allegations of
pain include:   (1) daily activities; (2) the location, duration, frequency, and
intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4)
the type, dosage, effectiveness, and side effects of medication; (5) treatment, other
than medication, the claimant receives for pain; (6) measures used for pain relief;
and (7) other factors pertaining to functional limitations and restrictions to pain.
*Id*. § 404.1529(c)(3)(i)–(vii).

Here, in the decision, the ALJ states that he considered Claimant's symptoms,
the objective medical evidence and other evidence, and the medical opinions of
record.   R. 20.   The ALJ followed the well-known two-step process in considering
Claimant's symptoms, as outlined above.   *Id.*   The ALJ concluded that, after
careful consideration of the evidence, "[C]laimant's medically determinable
impairments could reasonably be expected to cause the alleged symptoms;
however, the claimant's statements concerning the intensity, persistence and
limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision." *Id.*   The ALJ then provided a thorough discussion of Claimant's hearing testimony, the objective medical evidence of record, Claimant's self-reports, and the opinions of the state agency psychiatric and medical consultants.   R. 20–23.   The ALJ compared and contrasted the medical evidence of record with Claimant's subjective complaints, in concluding that she was capable of performing light work with limitations.   *Id.*   The ALJ also stated that he specifically included physical limitations in the RFC above and beyond those found by the state agency consultants, due to Claimant's subjective complaints of limitations with manipulating and reaching.   R. 23.   The ALJ also found that Claimant's depression and anxiety were severe in order to account for Claimant's subjective complaints and hearing testimony, despite contrary conclusions by the state agency psychiatric consultants.   *Id.*

In the joint memorandum, Claimant argues that the ALJ's determinations regarding Claimant's subjective complaints were "nothing more than boiler plate type language commonly found in Social Security decisions," and that the ALJ failed to provide specific reasons for rejecting her testimony regarding her subjective complaints.   Doc. No. 34, at 31–32.

Upon review, the undersigned disagrees.   This is not a case where the ALJ wholesale rejected Claimant's subjective complaints of pain; instead, the ALJ found

the subjective complaints only partially credible in limiting Claimant to light work, subject to the additional limitations set forth in the RFC determination.   *See* R. 20–23.   As demonstrated by the prior discussion, the ALJ compared and contrasted the medical evidence and the medical opinions of record with Claimant's subjective complaints, in concluding that Claimant was capable of performing light work subject to certain limitations.   And the ALJ specifically credited portions of Claimant's testimony and subjective complaints in fashioning the RFC.   Claimant addresses none of the ALJ's findings in detail, however, merely stating that the ALJ's credibility determination was boilerplate.   *See* Doc. No. 34, at 30–33. Accordingly, the Court could construe any arguments in this regard waived.   *Cf. Crawford*, 363 F.3d at 1161 (refusing to consider an argument that the claimant failed to raise before the district court).

To the extent not waived, however, the Court also finds the ALJ's discussion sufficient to support the decision to only partially credit Claimant's testimony and subjective complaints of total disability.   *See, e.g., Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766–67 (11th Cir. 2014) (finding ALJ's discussion of objective medical evidence of record provided "adequate reasons" for ALJ's decision to partially discredit the claimant's subjective complaints of pain); *Signorello v. Comm'r of Soc. Sec.*, No. 6:19-cv-1470-Orl-18PDB, 2020 WL 4905401, at *5 (M.D. Fla. July 31, 2020), *report and recommendation adopted*, 2020 WL 4904642 (M.D. Fla. Aug. 20, 2020)

("Boilerplate language is not necessarily objectionable—lawyers and judges alike 'cut and paste' language rather than 'reinventing the wheel' and saying the same thing in different ways.   What matters is whether the ALJ went beyond the boilerplate language, analyzed the record, and made individualized findings."); *Heinrichs-Walters v. Astrue*, No. 8:11-cv-01662-T-27AEP, 2012 WL 3893572, at *3 (M.D. Fla. Aug. 20, 2012), *report and recommendation adopted*, 2012 WL 3929886 (M.D. Fla. Sept. 7, 2012) (rejecting similar argument that the ALJ's credibility finding was boilerplate because after such language "the ALJ engaged in a two-page, thorough analysis of the Plaintiff's complaints of pain in comparison with the objective medical evidence on record" and the ALJ's conclusions were supported by substantial evidence).

The relevant inquiry "is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).   Because the ALJ provided adequate reasons for not fully crediting Claimant's subjective complaints of pain, Claimant's third assignment of error is unavailing.

## V.   CONCLUSION.

Based on the foregoing it is **ORDERED** that:

1.  The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the

Commissioner and thereafter to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on September 19, 2022.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties